IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ALISSA HARRISON-HAGIN,

      Plaintiff,                                No. CIV S-06-0053 GGH

   vs.

MICHAEL J. ASTRUE,[1]                     <u>ORDER</u>
Commissioner of
Social Security,

      Defendant.
_____/

        Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act").[2] For the reasons that follow, plaintiff's Motion for Summary Judgment or Remand is GRANTED in part, the Commissioner's Cross Motion for Summary Judgment is DENIED, and the Clerk is directed to enter judgment for the plaintiff. This case is remanded for further findings pursuant to sentence four of 42 U.S.C. § 405(g).

---

[1] Michael J. Astrue became Commissioner on February 12, 2007. Accordingly, he should be substituted as defendant in this suit. Fed. R. Civ. P. 25(d)(1). No further action need be taken by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] The case is before the undersigned pursuant to 28 U.S.C. § 636(c) (consent to proceed before a magistrate judge).

1

## BACKGROUND

Plaintiff, born June 2, 1968, applied on September 10, 2002 for disability benefits. (Tr. at 91.) Plaintiff alleged she was unable to work since May 4, 2002, due to bipolar disorder, post traumatic stress syndrome, recurring ovarian tumors, anxiety disorder, and learning disability. (Tr. at 98.)

In a decision dated March 20, 2004, ALJ Mark C. Ramsey determined plaintiff was not disabled. (Tr. at 46-51.) The Appeals Council remanded on June 30, 2004, with directions to consider plaintiff's maximum residual functional capacity with rationale and specific references to the record in support. The ALJ was also directed to obtain testimony from a vocational expert if necessary, to clarify the effect of plaintiff's limitations on the occupational base. (Id. at 75-76.) On remand ALJ Ramsey determined on January 28, 2005 that plaintiff was not disabled. The ALJ made the following findings:[3]

---

[3] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

1. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

2. The claimant's major depressive disorder, a mixed bipolar disorder, asthma, chronic lumbago, and a personality disorder are considered "severe" based on the requirements in the Regulations 20 CFR § 416.920(b).

3. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

4. The undersigned finds the claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.

5. The claimant has the residual functional capacity to lift and carry 20 pounds occasionally and 10 pounds frequently and occasionally climb, kneel, crawl and crouch. She can stand and walk for six hours and sit for at least six hours in an eight-hour day. In addition, due to her mental impairments, the claimant is limited to simple unskilled work without frequent public or fellow employee contact. The claimant should avoid working around pulmonary irritants such as dusts, fumes and gases.

6. The claimant is unable to perform any of her past relevant work. (20 CFR § 416.965).

7. The claimant is a "younger individual between the ages of 18 and 44" (20 CFR § 416.963).

8. The claimant has a "high school (or high school equivalent) education" (20 CFR § 416.964).

9. The claimant has no transferable skills from any past relevant work (20 CFR § 416.968.)

10. The claimant has the residual functional capacity to perform a significant range of light work (20 CFR § 416.967).

11. Although the claimant's exertional limitations do not allow her to perform the full range of light work, using Medical-Vocational Rule 202.21 as a framework for decision-making, there are a significant number of jobs in the

---

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

        national economy that she could perform. Examples of such jobs include work as a cannery worker (DOT# 529.686-014), electronics worker (DOT# 726.687-010) and small products assembler (DOT# 739.687-030). Ms. Cleighton-Clavel also testified the claimant could perform jobs as a small parts assembler (DOT# 706.684-022); office helper (DOT#239.567-010) and mailroom clerk (DOT# 209.687-026).

    12.    The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR § 416.920(g)).

(Tr. at 30-31.)

ISSUES PRESENTED

        Plaintiff has raised the following issues: A. Whether the Assessment of the Treating Medical Specialist Supports a Conclusion that Plaintiff is Disabled; and B. Whether the Hypothetical Question to the Vocational Expert Was Inadequate as a Matter of Law.

LEGAL STANDARDS

        The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir.1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 402, 91 S. Ct. 1420 (1971), quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229, 59 S. Ct. 206 (1938). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002).

\\\\\

\\\\\

ANALYSIS

    A. <u>Whether the ALJ Erred in Rejecting the Opinion of Plaintiff's Treating Physicians</u>

Plaintiff claims that the ALJ erred in rejecting the opinion of plaintiff's treating psychologist, Dr. Stern.

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. <u>Holohan v. Massanari</u>, 246 F.3d 1195, 1201 (9th Cir. 2001); <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1995).[4] Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. <u>Id</u>.; <u>Smolen v. Chater</u>, 80 F.3d 1273, 1285 (9th Cir. 1996).

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. An ALJ may reject an *uncontradicted* opinion of a treating or examining medical professional only for *"clear and convincing"* reasons. <u>Lester</u>, 81 F.3d at 831. In contrast, a *contradicted* opinion of a treating or examining professional may be rejected for *"specific and legitimate"* reasons. <u>Lester</u>, 81 F.3d at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (supported by different independent clinical findings), the ALJ may resolve the conflict. <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing <u>Magallanes v. Bowen</u>, 881 F.2d 747, 751 (9th Cir. 1989)). The regulations require the ALJ to weigh the contradicted treating physician opinion, <u>Edlund v. Massanari</u>, 253 F.3d 1152 (9th Cir.

---

[4] The regulations differentiate between opinions from "acceptable medical sources" and "other sources." <u>See</u> 20 C.F.R. §§ 404.1513 (a),(e); 416.913 (a), (e). For example, licensed psychologists are considered "acceptable medical sources," and social workers are considered "other sources." <u>Id.</u> Medical opinions from "acceptable medical sources," have the same status when assessing weight. <u>See</u> 20 C.F.R. §§ 404.1527 (a)(2), (d); 416.927 (a)(2), (d). No specific regulations exist for weighing opinions from "other sources." Opinions from "other sources" accordingly are given less weight than opinions from "acceptable medical sources."

2001),[5] except that the ALJ in any event need not give it any weight if it is conclusory and supported by minimal clinical findings. Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir.1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. Lester, 81 F.3d at 831.

In this case, the ALJ rejected the opinion of Dr. Stern:

> First, the treatment records supplied by Dr. Stearns did not support such extreme limitations. In fact, there is no documented evidence of thorough mental status examinations performed by Dr. Stearns that support his assessment of the claimant's functioning. Rather, Dr. Stearn's notes are generally cursory and brief. Given the brevity of those notes, it appears they represent medication follow-up rather than repeated mental status examinations or confirmed individualized therapy. His treatment records do not contain evidence of repeated mental status examinations after treatment was started or an assessment of the claimant's condition or daily functioning. From his treatment records, there are no documented findings that would support his assessment that the claimant is totally disabled. The undersigned also notes that prior to issuing his assessment, Dr. Stearns had not evaluated the claimant for several months. (Exhibit 14F) In fact, in his initial assessment, Dr. Stearns reported only moderate symptoms, not severe or disabling levels of depression and the extremely limited treatment regimen followed by Dr. Stearns contradicts his assessment that she was disabled due to her mental impairments: (Exhibit 6F, pgs. 1-3) For these reasons, the opinion issued by Dr. Stearns was rejected.

Instead, the ALJ chose to rely on the opinions of Dr. Koulianos, a consulting psychologist, and Dr. Walter, a testifying expert psychologist who reviewed the record but did not examine plaintiff. Dr. Koulianos examined plaintiff on January 14, 2003. She diagnosed adjustment disorder with depressed mood, acute; anxiety disorder not otherwise specified;

\\\\\

\\\\\\

---

[5] The factors include: (1) length of the treatment relationship; (2) frequency of examination; (3) nature and extent of the treatment relationship; (4) supportability of diagnosis; (5) consistency; (6) specialization. 20 C.F.R. § 404.1527

history of polysubstance abuse[6]; and personality disorder not otherwise specified with borderline personality traits. Stressors included removal of plaintiff's children from her care, and remote incidents of child abuse. (Tr. at 245-46.) At this time, plaintiff reported she was seeing Dr. Stern every other month, and was participating in individual and group therapy. (Tr. at 244.) After administering a complete psychological evaluation, Wechsler Adult Intelligence Scale, Wechsler Memory Scale, Bender Gestalt Test, and Trail Making Test, Dr. Koulianos opined that plaintiff could execute simple and uncomplicated routine one or two step instructions without significant difficulty, but it was questionable whether she could do so routinely and efficiently eight hours per day. Plaintiff could interact appropriately with peers, supervisors, and coworkers without significant difficulty. She was found unable to manage transitions or minor stressors associated with employment. (Id. at 246.)

        Dr. Walter testified at the first administrative hearing after remand. Having reviewed plaintiff's medical records, he testified that plaintiff has a cyclothymic problem which is a rapid, cycling mood of depression and anxiety. Because it was low grade and not severe for twelve months, he completed an RFC. (Id. at 501.) He concluded that plaintiff's ability to interact with the public would be moderate to marked, depending on what cycle plaintiff was in. If in between cycles, plaintiff would have a moderate problem. She could interact appropriately with supervisors. She was moderately to markedly limited in her ability to interact with coworkers. He added, "work pressures would be moderate. Again, you never know. At the

\\\\\

\\\\\

---

[6] Substance abuse is not at issue in this case. Plaintiff reported that she had not abused drugs in nine consecutive years. (Tr. at 243.) Plaintiff's history also included several traumatic events such as molestation at ages 3, 5, and 8. (Id. at 242.) For much of her childhood, she lived in a van with her mother and attended school only four and a half years of school between the ages of five and eleven. Neglect by her mother caused her and her siblings to be removed from her care. She ran away from home at age 13 and lived on the streets until age 21. She suffered physical abuse by her husband. Her three children were taken away from her by CPS for being an unfit parent. (Id. at 242-43.)

manic stage, she couldn't do well."[7] (Id. at 501.) Dr. Walter thought plaintiff's impairments were severe, but did not last at a severe level consistently for twelve months.[8] (Id.) Plaintiff could remember short and simple instructions, but she would be close to moderately impaired in remembering detailed instructions. (Id. at 501-02.) Dr. Walter added that plaintiff's capacity depended on the medication she was taking and how well it was working. He added, "I'm not going to comment about the doctor, because that's his choice to give her the medication he did. But I feel that, in her case, it's not working well if she has mood swings as much as three or four times a week. It all depends on how well she's medicated." (Id. at 502.) He explained that he "couldn't get much out of" Dr. Stern's assessment because "that's someone else's opinion on, on a chart, .. there's no report with it." (Id. at 499.) He does review chart notes and written reports, however. (Id. at 499-500.) He also stated that when he reviews reports, such as that written by Dr. Koulianos, he looks at the conclusions but does not rely on them for his opinion or diagnosis. (Id. at 500.)

Here, the ALJ chose to rely on a testifying expert who had no opportunity to examine the plaintiff. The opinions of a nonexamining, testifying medical advisor may serve as substantial evidence when supported by other substantial evidence in the record. See Morgan v. Commissioner of the Social Security Administration, 169 F.3d 595, 600 (9th Cir. 1999); Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995). Although the ALJ opined that Dr. Stern's notes were cursory and brief, this psychologist had notes and first hand evaluations, unlike Dr. Walter. Furthermore, Dr. Walter's opinion regarding the effect of work stressors on

---

[7] In his psychiatric review technique form, Dr. Walter opined, somewhat inconsistently, that plaintiff was only moderately impaired in her ability to respond to work pressures. He also thought she was moderately to markedly impaired in interacting appropriately with the public and co-workers. (Tr. at 436.)

[8] Plaintiff points out that plaintiff sought treatment from HRC (Dr. Stern) for approximately two years. After the first and second hearings, held September 25, 2004 and September 14, 2005, plaintiff's mental impairments were found to be severe by the ALJ. Therefore, plaintiff correctly refutes this opinion by Dr. Walter.

plaintiff was equivocal at best. He thought it really depended on whether plaintiff was in a manic stage, and "you never know," implying that his assessment of only moderate impairment in this area was subject to change. If construed as strictly a moderate limitation, it is not supported by other substantial evidence in the record. When taken with Drs. Koulianos' and Stern's opinions that plaintiff was markedly limited in her ability to deal with work stressors, the ALJ should have accepted these latter opinions.

The ALJ also discounts Dr. Stern's opinion because his initial evaluation of plaintiff indicated only moderate symptoms and a very limited treatment schedule. However, Dr. Stern's initial notes do not state plaintiff's symptoms are moderate. Rather, the ALJ may have construed this degree of severity based on Dr. Stern's GAF score of 55[9] on September 25, 2002. (Id. at 235.)  The ALJ cannot reject a treating doctor based simply on an initial evaluation. He must look at the entire course of treatment to determine the severity of plaintiff's symptoms and how the treatment is working. Treating notes indicate that plaintiff was being treated for major depressive disorder, recurrent, severe, and mixed bipolar disorder. (Tr. at 235, 230-32.) Dr. Stern's medical assessment on September 24, 2003, although admittedly a check marked form, was beneficial in that it was completed after an entire course of treatment, permitting this psychologist to make a determination as to plaintiff's condition after treating her for a year. At this time, Dr. Stern found that plaintiff had moderate impairment in following work rules, relating to coworkers, understanding, remembering and carrying out simple instructions, behaving in an emotionally stable manner, relating predictably in social situations, and being reliable. (Id. at 377-78.) She was markedly impaired in dealing with the public, using judgment, interacting with supervisors, dealing with work stresses, understanding, remembering, and

---

[9] GAF is a scale reflecting the "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed.1994) ("DSM IV"). According to the DSM IV, a GAF of 51-60 indicates moderate symptoms such as flat affect, circumstantial speech, occasional panic attacks, or moderate difficulty in functioning as in few friends or conflicts with peers or co-workers.

carrying out detailed, complex instructions. (Id.) She was extremely impaired in functioning independently and maintaining attention and concentration. (Id. at 377.) The basis for this assessment was mood swings and lack of focus and concentration. (Id.) The fact that Dr. Stern had not evaluated plaintiff for several months prior to this assessment is of little significance as there is no evidence that her condition had changed in the intervening time period.

Furthermore, Dr. Koulianos thought plaintiff's condition to be severe enough that she would similarly limit her functional capacity. This psychologist also examined plaintiff and thought she could not deal with minor stressors. It is important to note that Dr. Koulianos thought plaintiff's effort on testing was adequate and that her test scores were valid and reliable. (Id. at 245.) In fact, all three medical practitioners agreed that plaintiff could not deal with the stresses of work.

Although some inconsistency may be construed from Dr. Stern's most recent GAF score of 58 on June 30, 2004, (Id. at 380), and his assessment of September 24, 2003, in which he finds marked limitations, the ALJ was not free to reject him on this basis by relying upon a non-examining doctor . Remand is required to determine whether the ALJ needs to develop the mental health record further by obtaining more evidence or come to a conclusion based on acceptance of Dr. Stern's opinion.

  B. Hypothetical to Vocational Expert

Plaintiff asserts that the hypothetical to the vocational expert was incomplete in failing to include the limitation of impairment in ability to handle work stressors.

Hypothetical questions posed to a vocational expert must include all the substantial, supported physical and mental functional limitations of the particular claimant. Flores v. Shalala, 49 F.3d 562, 570-71 (9th Cir.1995); see Light v. Social Sec. Admin., 119 F.3d 789, 793 (9th Cir.1997). If a hypothetical does not reflect all the functional limitations, the expert's testimony as to available jobs in the national economy has no evidentiary value. DeLorme v. Sullivan, 924 F.2d 841, 850 (9th Cir. 1991). But see Thomas v. Barnhart, 278 F.3d

947 (9th Cir. 2002) (approving hypothetical directing VE to credit specific testimony which VE had just heard); Matthews v. Shalala, 10 F.3d 678 (9th Cir. 1993) (failing to include all limitations in a hypothetical may be harmless error if the ALJ's conclusions are supported by other reliable evidence).  While the ALJ may pose to the expert a range of hypothetical questions, based on alternate interpretations of the evidence, substantial evidence must support the hypothetical which ultimately serves as the basis for the ALJ's determination.  Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988).[10]

The hypothetical to the experts at both hearings, upon which the ALJ based his decision, was that plaintiff "is limited to simple, unskilled work, without frequent public or fellow employee contact ..." (Tr. at 522.)  He then added some physical limitations into the hypothetical. (Tr. at 503-04, 522-23.)  At both hearings, the ALJ failed to include the additional limitations of restrictions in work stressors.  All practitioners, including Dr. Walter's somewhat equivocal opinion, thought plaintiff was limited in dealing with work stressors.  The ALJ's reliance on plaintiff's daily activities as a means to eliminate this restriction is not a substitute for the stresses that a job entails.  As aptly pointed out by plaintiff, Social Security Ruling 85-15 provides:

> The reaction to the demands of work (stress) is highly individualized, and mental illness is characterized by adverse responses to seemingly trivial circumstances.  The mentally impaired may cease to function effectively when facing such demands as getting to work regularly, having their performance supervised, and remaining in the workplace for a full day. A person may become panicked and develop palpitations, shortness of breath, or feel faint while riding in an elevator; another may experience terror and begin to hallucinate when approached by a stranger asking a question.  Thus, the mentally impaired may have difficulty meeting the requirements of even so-called 'low-stress' jobs.

---

[10] Similarly, "[t]he ALJ is not bound to accept as true the restrictions presented in a hypothetical question propounded by a claimant's counsel." Magallanes v. Bowen, 881 F.2d 747, 756 (9th Cir. 1989).  The ALJ is free to accept them if they are supported by substantial evidence or reject them if they are not.  Id. at 756-757.

The activities that plaintiff is able to accomplish, such as gardening, arranging photo albums, walking, shopping, camping twice a year, eating out occasionally, attending a concert once a year, and home schooling her daughter for five hours a day (by sitting with her and watching her work), (tr. at 490), do not involve the same type of stresses as a forty hour a week job.

Defendant makes no argument to refute plaintiff's contention that the ALJ should have included a limitation regarding work stressors.[11]  On remand, the ALJ shall include this limitation in his hypothetical to the expert.

CONCLUSION

The decision whether to remand a case for additional evidence or simply to award benefits is within the discretion of the court. Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir. 1990).  If additional administrative proceedings would remedy the defects in the decision, remand is appropriate. Salvador v. Sullivan, 917 F.2d 13, 15 (9th Cir. 1990); Barbato v. Commissioner of Social Security Admin., 923 F. Supp 1273, 1277-78 (C.D.Cal. 1996).  To avoid the possibility of an inequitable result, this case should be remanded to enable the ALJ to obtain further mental health evidence, if warranted, and/or vocational testimony regarding the effect of all of plaintiff's nonexertional limitations on her ability to do light work, and whether there is any other work she can do.  The ALJ must consider the opinion of Dr. Stern as set forth *supra*.

Accordingly, the court finds the ALJ's assessment is not fully supported by substantial evidence in the record or based on the proper legal standards.  Plaintiff's Motion for Summary Judgment or Remand is granted in part, the Commissioner's Cross Motion for

\\\\\

---

[11] Defendant makes a separate argument concerning plaintiff's credibility, with the assertion that plaintiffs have a tendency to exaggerate their symptoms.  However, as noted in the previous section, Dr. Koulianos thought plaintiff's effort on testing was adequate and that her test scores were valid and reliable.  (Id. at 245.)  Dr. Stern made his assessment of ability to do work related activities with a treating record that did not question plaintiff's crediblity.

1  Summary Judgment is denied, and the Clerk is directed to enter judgment for the plaintiff.   This
2  case is remanded for further findings pursuant to sentence four of 42 U.S.C. § 405(g).
3  DATED: 3/23/07

/s/ Gregory G. Hollows

GREGORY G. HOLLOWS
U.S. MAGISTRATE JUDGE

GGH/076
Harrison-Hagin53.ss.wpd